UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELCOMETER, INC., a
Michigan corporation

    Plaintiff,

vs.

    Case No. 12-cv-14628
    HON. GERSHWIN A. DRAIN

TQC-USA, Inc., a Michigan corporation,
PAINTMETER.COM, a foreign corporation,
and ROBERT THOREN, an individual.

    Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT [#38] AND DENYING PLAINTIFF'S REQUEST FOR AN ORDER COMPELLING THE PRODUCTION OF STORED COMMUNICATIONS WITHOUT PREJUDICE

**I. Introduction**

Before the court is Plaintiff's Motion for Entry of Default Judgment, filed on August 16, 2013. Defendants, Paintmeter.com ("Paintmeter") and Robert Thoren ("Thoren"), have failed to file an Answer or otherwise defend in this matter, nor have they filed any Response to Plaintiff's Motion for Entry of Default Judgment.

**II. Factual Background**

Plaintiff, Elcometer, Inc. ("Elcometer"), is a leading manufacturer in the business of thickness gauges and other inspection instrumentation for quality control of surface coatings, including paints and sealants. Since 1949, Elcometer has used the trademark ELCOMETER® to identify, market, and sell its thickness gauges worldwide.

On October 18, 2012, Elcometer filed its Complaint against Defendants TQC-USA ("TQC"), Paintmeter, and Thoren, alleging that Paintmeter and Thoren had used the ELCOMETER® trademark to confuse and deceive Elcometer's current and potential customers. Elcometer alleges Paintmeter posed as an authorized dealer for its company by prominently displaying the ELCOMETER® mark on its website. When potential customers contacted Paintmeter via email at "sales@paintmeter.com" or an online advertised toll free number, Thoren, the founder and director of Paintmeter, would reply with false and unfavorable statements about Elcometer in an attempt to convince customers to purchase competing products. Competing merchandise included those from TQC, an authorized dealer for DeFelsko Corporation, one of Elcometer's direct competitors. Thoren and Paintmeter were authorized agents for TQC until shortly after Elcometer commenced this action.

On December 20, 2012, Elcometer filed a motion for Preliminary Injunction seeking to enjoin Defendants from using the ELCOMETER® trademark on any websites, among other remedies. *See* Dkt. No. 15. On February 14, 2013, Elcometer filed an Ex Parte Motion for Alternate Service of Process seeking to serve Paintmeter and Thoren via email. *See* Dkt. No. 22. The Court granted Elcometer's Ex Parte Motion after determining that Elcometer had been diligent yet unsuccessful in its attempt to serve Paintmeter and Thoren through traditional means and recognized sales@paintmeter.com as Defendants' active account. *Id.* at 2. The Court also directed Paintmeter and Thoren to file a response to Elcometer's Motion for Preliminary Injunction no later than March 8, 2013 under the admonishment that failure to do so could result in sanctions up to and including entry of default judgment. *Id.* at 5. Paintmeter and Thoren did not respond nor attend the hearing

on March 19, 2013. However, Thoren did confirm receipt of email notification by sending Elcometer an email mocking its efforts to pursue him in this suit. *See* Ex. 1, Plf.'s Mot. Def. Jud.   The Court granted Elcometer's request for injunctive relief and ordered Paintmeter and Thoren to remove the ELCOMETER® trademark and any other references indicating they represent or distribute Elcometer products from www.paintmeter.com and any other websites controlled by the Defendants. *See* Dkt. No. 27 at 2. Additionally, the Court ordered ownership of the toll-free number and the paintmeter.com domain be immediately transferred to Elcometer. AT&T, the responsible organization for the toll free number, informed Elcometer that the number could not be re-assigned because it is only responsible for directing U.S. based phone traffic and the number in question terminates or redirects in Canada. Network Solutions, the domain registrar for www.paintmeter.com, removed the ELCOMETER® mark from the site and transferred control of the domain to Elcometer. However, Paintmeter and Thoren continue to operate identical sites, including www.ElcometerSales.com.

On March 26, 2013, Elcometer filed a Request for Clerk's Entry of Default and the Clerk entered Default against Paintmeter and Thoren on the same day. Paintmeter and Thoren's failure to appear or respond to this litigation has left Elcometer unable to conduct meaningful discovery and accurately assess the damages accrued. Elcometer served a subpoena on Network Solutions that sought the content of non-privileged emails associated with www.paintmeter.com during the time period relevant to this case, however Network Solutions insisted that under the Stored Communications Act, 18 U.S.C. 2701 *et seq.* ("SCA"), it cannot produce copies of email content without a Search Warrant or Demand.

Plaintiff now moves for an entry of default judgment, permanent injunctive relief, and an order compelling production of stored communications.

## III. Entry of Default Judgment

Entry of judgment by default is governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55 states:

> (a) **Entering a Default**. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
>  (b) **Entering a Default Judgment**
>
>> (1) **By the Clerk**. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk–on the plaintiff's request, with an affidavit showing the amount due–must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>>
>> (2) **By the Court**. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>>
>>> (A) conduct an accounting;
>>> (B) determine the amount of damages;
>>> © establish the truth of any allegation by evidence; or
>>> (D) investigate any other matter

Elcometer has presented sufficient evidentiary support for the Court to grant default judgment as to liability. However, because the claims in this matter are not for a certain sum, the Court should hold an evidentiary hearing to determine the appropriate amount of damages, pursuant to Rule 55(b)(2). "It is an appropriate and efficient use of judicial

resources to refer this matter to the Magistrate Judge for an evidentiary hearing and a Report and Recommendation on the appropriate damages to award Plaintiff." *Davis v. Ivy*, No. 11-10803, 2013 U.S. Dist. LEXIS 52778, at *13 (E.D. Mich. Apr. 12, 2013).

## IV. Permanent Injunction

Regarding Plaintiff's federally-registered trademarks, pursuant to 15 U.S.C. § 1116(a) the Court:

> shall have power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), ©, or (d) or section 11125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting for the manner and form in which the defendant has complied with the injunction.

According to established principles of equity, a plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Elcometer alleges first that Paintmeter's and Thoren's unauthorized use of the ELCOMETER® trademark has resulted in irreparable injury to Elcometer and the goodwill associated with its trademark. Second, the right to exclude others from using one's protected intellectual property is not compensable through money damages and constitutes irreparable harm. *See eBay*, 547 U.S. at 394-95 (Roberts, C.J. concurring). Third, the Court's issuance of a permanent injunction is really simply an order for Defendants to obey

the law in regard to trademark usage and defamation. Finally, a permanent injunction would serve the public interest by preventing potential consumer confusion in the market place. *BellSouth Ad. and Pub. Corp v. Real Color Pages, Inc.,* 792 F.Supp. 775, 785 (M.D. Fla. 1991).

**V.      Order Compelling Production of Stored Communications**

"Although liability is no longer an issue once default has been entered, the plaintiff must still prove the extent of its alleged damages." *Evergreen Nat'l Indem. Co. v. Gibralter Land Co.,* No. 09-12941, 2010 U.S. Dist. LEXIS 4126, at *5 (E.D. Mich. January 10, 2010) (citing *Antonine v. Atlaws Turner, Inc.* 66 F. 3d 105, 110 (6th Cir. 1995)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of the damages with reasonable certainty." *Vesligaj v. Peterson,* 331 Fed. Appx. 351, 355 (6th Cir. May 11, 2009) (citing *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F. 3d 151, 155 (2d Cir. 1999)).

Plaintiff alleges that an accurate estimate of damages can only be gathered from Paintmeter and Thoren's relevant email communications. While such documents would normally be accessible via traditional discovery methods under Rule 34, Paintmeter and Thoren's unresponsiveness has prevented Elcometer from gaining access to the emails. Plaintiff requests the Court compel Network Solutions to produce the content of Defendants' non-privileged email communications against Network Solutions' objections that they are restricted by the SCA. The SCA generally prohibits communication service providers such as Network Solutions from divulging the content of private communications

while in electronic storage by that service.

In support, Elcometer points to *Flagg v. City of Detroit*, 252 F.R.D. 346, 352 (E.D. Mich. 2008), where the Court held that electronic communications and any archived copies of such communications preserved in electronic form fall under Rule 34 discoverable material. However, unlike the present case, the defendant in *Flagg* was available and responsive, but refused to consent to the production of electronic messages that were stored by her third-party service provider. *Id.* at 348, 352-53. While the Court found that the information in question was discoverable, it did not permit access to the material by enforcing the plaintiff's third-party subpoena, but directed the plaintiff to serve document requests to the defendant-subscriber, who was then directed to instruct the third-party service provider to produce the responsive material to the plaintiff. *Id.* at 352.

It does not appear that the Court has the right to enforce a civil subpoena to non-party internet service providers. Unless the matter falls within a specific exception, the SCA "lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order." *Flagg*, 252 F.R.D. at 450. While Elcometer argues that the SCA does not trump its right to access discoverable material, it presents no authority for this proposition. Further, *Flagg*, as well as other courts presented with issue, appears to reject this contention. *See Flagg*, 252 F.R.D. at 350. (The SCA "lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order."); *see also In re Subpoena Duces Tectum to AOL, LLC,* 550 F. Supp. 2d 606, 611-12 (E.D. Va. 2008)("[T]he exceptions enumerated in [the SCA] do not include civil discovery subpoenas. Furthermore, [the SCA] does not make any references to civil litigation or the civil discovery process.")

## VI. Conclusion

The Court will Grant Plaintiff's motion for entry of default judgment as to liability and Plaintiff's request for permanent injunctive relief against Paintmeter.com and Robert Thoren.

It Is Further Ordered that the Court will Deny Plaintiff's request for an order compelling the production of stored communications without prejudice.

It Is Further Ordered that the Court will conduct a hearing on damages on October 1, 2013 at 2:00 p.m. and Plaintiff must provide the legal authority supporting their calculations of damages against the Defendants.

So Ordered.

Dated:   September 23, 2013                               /s/Gershwin A Drain
                                                          GERSHWIN A. DRAIN
                                                          US District Court Judge