UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELCOMETER, INC., a
Michigan corporation,

      Plaintiff,

vs.

Case No. 12-cv-14628
HON. GERSHWIN A. DRAIN

TQC-USA, Inc., a Michigan corporation,
PAINTMETER.COM, a foreign corporation,
and ROBERT THOREN, an individual.

      Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO TQC'S COUNTERCLAIM AND DENYING WITHOUT PREJUDICE THE REQUEST FOR SANCTIONS [#61], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS AGAINST TQC [#62]**

**I.   INTRODUCTION**

On October 18, 2012, Plaintiff, Elcometer, Inc. ("Elcometer"), filed its Complaint against Defendants Paintmeter.com ("Paintmeter"), Robert Thoren ("Thoren"), and TQC-USA, Inc. ("TQC"). Presently before the Court is Plaintiff's Motion for Summary Judgment as to TQC's Counterclaim and for Sanctions [#61], and Plaintiff's Motion for Summary Judgment on Claims Against TQC [#62]. Both Motions were filed on February 6, 2014. TQC filed separate Responses on February 27, 2014. Plaintiff filed separate Replies on March 17, 2014. Oral arguments were heard on March 24, 2014.

Based on the facts below, this Court will grant Plaintiff's Motion for Summary Judgment as to TQC's Counterclaim and deny without prejudice the request for Sanctions,

and deny Plaintiff's Motion for Summary Judgment on Claims Against TQC.

## II. FACTUAL BACKGROUND

Elcometer is a leading manufacturer in the business of thickness gauges and other inspection instrumentation for quality control of surface coatings, including paints and sealants. Since 1949, Elcometer has used the trademark ELCOMETER® to identify, market, and sell its thickness gauges worldwide.

On October 18, 2012, Elcometer filed its Complaint against Defendants TQC-USA ("TQC"), Paintmeter, and Thoren, alleging that Paintmeter and Thoren had used the ELCOMETER® trademark to confuse and deceive Elcometer's current and potential customers. Elcometer alleges Paintmeter posed as an authorized dealer for its company by prominently displaying the ELCOMETER® mark on its website. When potential customers contacted Paintmeter via email at "sales@paintmeter.com" or an online advertised toll free number, Thoren, the founder and director of Paintmeter, would reply with false and unfavorable statements about Elcometer in an attempt to convince customers to purchase competing products. Competing merchandise included those from TQC, an authorized dealer for DeFelsko Corporation, one of Elcometer's direct competitors. Thoren and Paintmeter were authorized agents for TQC until shortly after Elcometer commenced this action. The Court has entered default judgments against Paintmeter and Thoren for their failure to appear or otherwise defend this action. *See* Dkt. No. 67.

On April 26, 2013, TQC filed a counterclaim against Elcometer, alleging that Elcometer filed the instant action with "an ulterior purpose of non-competitive behavior." *See* Dkt. No. 35 ¶ 17. TQC asserts a claim of abuse of process. Plaintiff now moves for summary judgment as to both TQC's counterclaim and its claims against TQC.

## III. LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the defendant; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Plaintiff's Motion for Summary Judgment as to TQC-USA's Counterclaim

### 1. No Abuse of Process

A valid abuse of process claim,

> [C]ontemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure, e.g., where the defendant utilizes discovery in a manner consistent with the rules of procedure, but for the improper purpose of imposing an added burden and expense on the opposing party in an effort to conclude the litigation on favorable terms.

*Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 322, 788 N.W.2d 679 (2010) (citing *Vallance v. Brewbaker*, 161 Mich. App. 642, 646, 411 N.W.2d 808 (1987)). Such a claim must be based on prior proceedings that were instituted or continued by the defendant and terminated in favor of the present plaintiff. *Friedman v. Dozorc*, 412 Mich. 1, 48, 312 N.W.2d 585 (1981). An "action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Id*. The *Dalley* court affirmed a lower court's decision granting summary disposition in favor of the defendants, where the plaintiff's complaint alleged that the defendants harbored an ulterior purpose to intimidate, harass, and establish a tactical business advantage, when there was no factual basis for the proceeding. *Dalley,* 287 Mich. App. at 322-23. "A claim asserting nothing more than an improper motive in properly obtaining process does not successfully plead an abuse of process." *Id*. at 322. *See also Young v. Motor City Apartments Ltd. Dividend Housing Ass'n No. 1 & No. 2*, 133 Mich. App. 61, 350 N.W.2d 790 (1984)). In affirming the trial court, the *Dalley* court concluded that the allegations of abuse only related to the improper motive behind causing process to issue, the filing of an action, rather than the improper use of process once it has issued. *Id*. at 323.

Elcometer argues that this Court should grant summary judgment because there has

been no abuse of process. Elcometer maintains that it has provided ample bases for its action and only filed the action after an extensive pre-suit investigation. Furthermore, Elcometer alleges TQC's claims fail as a matter of law and there are otherwise no genuine issues of material fact in dispute.

TQC fails to plead or provide any evidence of a single improper act sufficient to sustain a claim for abuse of process. TQC alleges that Elcometer committed an "improper act" when it filed this Complaint for "solely anticompetitive reasons." *See* Dkt. No. 35. However, the only "act" referenced in TQC's counterclaim is the filing of the instant Complaint. "In a case alleging abuse of process, the pleadings must allege with specificity an act committed in the use of process 'that is improper in the regular prosecution of the proceeding.'" *Dalley*, 287 Mich. App. at 322 (citing *Early Detection Center, PC v. New York Life Ins. Co.,* 157 Mich. App. 618, 629, 403 N.W.2d 830 (1986)). TQC's counterclaim fails to meet the requirements to sustain a claim for abuse of process and therefore fails as a matter of law.

TQC openly admits that "the counterclaim has failed to allege facts sufficient to state a claim upon which relief can be granted," however, it requests that the claim for abuse of process be dismissed without prejudice and that this Court grant it leave to amend the counterclaim pursuant to MICH. COMP. LAWS ANN. § 2.116(I)(5) (1985). *See* Dkt. No. 68 p.5. However, this is a claim in federal court, and the appropriate procedural law to look to is the Federal Rules of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460, 472-74 (1965). FED. R. CIV. P. 15 governs amending pleadings and states:

> (1) A party may amend its pleading once as a matter of course within:
>     (A) 21 days after serving it, or
>     (B) if the pleading is one to which a responsive pleading is required, 21 days

> after service of a responsive pleading, or 21 days after service of a motion under Rule12(b), (e), or (f), whichever is earlier.

TQC filed its counterclaim on April 26, 2013, and it is now well past the time limit to amend under the Federal Rules. Moreover, TQC fails to explain how its amendment will remedy the deficiencies with its claim. As such, the Court cannot determine whether amendment would be futile. Moreover, this case has a trial scheduled to begin in less than two months and both discovery and dispositive motion cutoff deadlines have passed. Thus, Elcometer will be severely prejudiced if amendment were permitted at this late stage in the proceedings. Therefore, the Court will grant the motion to dismiss the counterclaim with prejudice, and deny Defendant's request to amend.

## 2. Proposed Sanctions

Under 11(b), FED. R. CIV. P. 11, litigants have an obligation to "refrain from pursuing meritless or frivolous claims during the course of the proceedings." *Dearborn Street Bldg. Assoc., LLC v. Huntington Nat. Bank*, 411 F. App'x 847, 850 (6th Cir. 2011). When a party presents a pleading, they are certifying that the claims, defenses, "and other legal contentions are warranted by existing law or by a nonfrivolous argument...the factual contentions have evidentiary support...[and] the denials of factual contentions are warranted on the evidence." FED. R. CIV. P. 11(b)(2). If FED. R. CIV. P. 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c).

Elcometer requests that TQC be sanctioned for: (1) making claims that have been specifically rejected by Michigan courts, and (2) misrepresenting the truth when it claimed in a sworn statement that "no agency relationship exists between TQC and Paintmeter" and

6

that "no agreement exists providing for an agency relationship between Paintmeter and TQC." At the time TQC made the aforementioned statements, Elcometer had already obtained a copy of a Certificate of Representation that TQC prepared for Paintmeter to convey to Paintmeter's clients that Paintmeter was an authorized representative of TQC. However, in its Motion, Elcometer incorrectly asserts that "[a] court <u>must</u> impose sanctions for a Rule 11 violation." *See* Dkt. No. 61 p. 9 (emphasis added). FED. R. CIV. P. 11(c)(1) only states that a court <u>may</u> impose sanctions. Furthermore, FED. R. CIV. P. 11(c)(2) requires that a motion for sanctions be "made separately from any other motion." Elcometer includes its motion for sanctions within its Motion for Summary Judgment as to TQC's counterclaim. Moreover, TQC maintains that its "stands by its sworn statements that no agency relationship, or agreement providing for an agency relationship, exists between Paintmeter and TQC." *See* Dkt. No. 68 p.7.

At this juncture, sanctions are inappropriate based on the remaining questions of fact that need to be resolved pertaining to TQC's agency relationship. However, this Court may revisit the matter later on if it is subsequently determined that TQC intentionally misrepresented the truth in its prior statement. Therefore, the request for sanctions is denied without prejudice.

**C.     Plaintiff's Motion for Summary Judgment on Claims Against TQC-USA**

**1. Potential Agency Relationship**

Elcometer based its arguments for summary judgment on the responsibility

bestowed upon TQC as a result of its agency relationship with Paintmeter and Thoren. "Agency is the fiduciary relationship that arises when one person ('a principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006). Under Michigan law, an agency relationship may arise when there is a manifestation by the principal that the agent may act on his behalf. *Meretta v. Peach*, 195 Mich. App. 695, 697, 491 N.W.2d 278 (1992) (citing RESTATEMENT (SECOND) OF AGENCY § 15, p. 82 (1958)).

According to Elcometer, TQC held Paintmeter and Thoren out as its agents and actively facilitated and profited from the relationship. The evidence shows that Paintmeter sold TQC products, TQC charged Paintmeter's credit card orders through its account, TQC shipped products to customers on Paintmeter's demand, TQC provided Paintmeter with a Certificate of Representation, and TQC authorized Paintmeter and Thoren to use its address on business correspondence and facilities for product storage.

Alternatively, TQC maintains that it did not have an agency relationship with Paintmeter and Thoren, and that the evidence Elcometer points to is only indicative of a traditional business relationship. While in its answer, TQC admits that Paintmeter acts as a dealer for TQC," TQC went on to state that "Paintmeter is one of several other dealers TQC works with on a regular basis. There is no special relationship between TQC and Paintmeter/Robert Thoren or any relationship different from any other relationship TQC had with its other dealers." *See* Dkt. No. 8, pg. 7. Whether or not TQC had an established agency relationship with Paintmeter and Thoren is a material question of fact. Based on this issue alone, it is proper for this Court to deny Elcometer's Motion for Summary Judgment.

**2. Vicarious Liability**

Elcometer, assuming that TQC has an agency relationship with Paintmeter and Thoren, maintains that TQC is consequently vicariously liable for Paintmeter and Thoren's actions. "Vicarious liability arises when common-law principles of agency impose liability on the defendant for the infringing acts of its agent." *1-800 Contacts v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013). Moreover, Elcometer argues that even ignoring the facts it believes support the establishment of an agency relationship, TQC is alternatively liable as a joint tortfeasor. In joint tortfeasor liability cases, vicarious liability for trademark infringement is appropriate when a defendant and the infringer "have an apparent or actual partnership, have authority to bind one another in transactions with third parties, or exercise joint ownership or control over the infringing product." *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992). Elcometer argues that, at the very minimum, TQC and Paintmeter have a partnership relationship, as Thoren has stated that Paintmeter works "hand-in-hand with TQC." *See* Dkt. No. 62 Ex. D.

TQC argues that an agency relationship is not created just because a company is an authorized distributor. *Premier Bus. Grp., LLC v. Red Bull of North America, Inc., et al.*, No. 08-CV-01453 2009 U.S. Dist. LEXIS 91647, *16 (N.D. Ohio Sept. 30, 2009). TQC maintains that there is nothing to support that TQC controlled Paintmeter's business or decisions, nor does running a credit card charge or shipping products on Paintmeter's demand support an inference of an agency relationship. *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 247 (S.D. N.Y. 2010).

Furthermore, vicarious trademark liability "is a cause of action recognized in some circuits but not yet recognized in the Sixth Circuit." *Tovey v. Nike, Inc. et al.,* No. 1:12-cv-

448 2013 U.S. Dist. LEXIS 16084, *20 (N.D. Ohio July 3, 2012). Elcometer attempts to refute the finding of *Tovey* by pointing to *Coach Inc. v. Goodfellow*, 717 F.3d 498, 502-03 (6th Cir. 2013), where the court mentions vicarious liability and references, by citation only, the Seventh Circuit's defining requirements of vicarious liability. However, vicarious liability is a trivial matter in *Coach* and its application in the Sixth Circuit is not discussed as a matter of law. Alternatively, the *Tovey* court used this recognition to hold that amending a complaint to include a vicarious trademark infringement would be futile. *Id.* at *20. Since *Tovey* recently denied an amended complaint on the basis of a current lack of legal recognition of vicarious trademark liability in the Sixth Circuit, and because a claim for summary judgment is generally more difficult to obtain than an amended complaint, this Court will deny Elcometer's Motion for Summary Judgment based on its vicarious liability argument.

### 2. Contributory Infringement

"Contributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or having reason to know that the third party is infringing, yet failing to take reasonable remedial measures." *1-800*, 722 F.3d at 1249. Elcometer argues that TQC knew of Paintmeter and Thoren's infringement and chose to continue supplying them with product. Therefore, TQC encouraged and facilitated the infringement which is a willful violation fo the Lanham Act. 15 U.S.C. § 1125(a). Under the Lanham Act:

> (a)(1) Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
> (A) is likely to cause confusion , or to cause mistake, or to deceive as to the

> affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id*. With contributory infringement, "even if a manufacturer does not directly control another in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances...if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Inwood Laboratories, Inc., v. Ives Laboratories, Inc.*, 456 U.S. 844, 853-54 (1982).

Elcometer maintains that TQC knew about Paintmeter and Thoren's infringing activity as, on multiple occasions, Thoren forwarded emails to TQC in which he steered prospective customers from the Elcometer products they were seeking, to competing products in order for TQC to fill the requested order. Elcometer further argues that the aforementioned emails made TQC aware that Paintmeter was disparaging Elcometer's product quality, pricing, and service. In his deposition, Bialek confirmed that he understood Paintmeter was attempting to convince the customer to buy a competing product over an Elcometer product. *See* Dkt. No. 62 Ex. E.

However, TQC argues that it had no reason to know of the alleged infringement by Paintmeter or Thoren, and that it was not aware of the suspicions until this suit was brought. When Elcometer revoked its trademark authorization from Paintmeter, it did not give TQC any notice that Paintmeter was no longer permitted to sell its products, rather

TQC believed that Elcometer continued to consent to Paintmeter's use of the trademark. When TQC found out about the alleged trademark infringement, it immediately stopped supplying Paintmeter with its products.

There is a question of material fact as to when TQC knew about Paintmeter and Thoren's alleged infringement and it would therefore be improper for the Court to grant Summary Judgment based on this argument. This Court need not address TQC's remaining arguments in support of denying Elcometer's Motion for Summary Judgment as it has been determined that there is a question of fact.

### IV. CONCLUSION

For the reasons stated above, the Court will GRANT Plaintiff's Motion for Summary Judgment as to TQC's Counterclaim and DENY without prejudice the request for Sanctions [#61], and DENY Plaintiff's Motion for Summary Judgment on Claims Against TQC [#62].

SO ORDERED.

Dated: March 25, 2014  /s/ Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE